The Terre Haute, Alton and St. Louis Railroad Company
v. Norman.

PLEADING—ESTOPPEL.—Suit by A against the T railroad company
for the assessment of damages, on account of the taking by the
company for the use of her road, of a lot in B, belonging to A.
The sixth paragraph of the answer alleged that in the year 1852,
one C being in possession of the lot, and claiming the ownership
thereof, with the full knowledge of A, died, leaving a widow and
minor heirs; that one D was appointed by the proper Court guar-
dian of said heirs, who filed his petition in the E Court of Com-
mon Pleas, for the sale of the interest of said heirs in the lot in
question, procured an order of sale, sold the lot to the defendant at
its full appraised value, reported the sale to the Court, which was
approved; that the defendant paid the purchase money in full;
that a deed was ordered, executed and approved by the Court; that
D afterwards made a final settlement of his said trust, and obtained
a discharge therefrom; that afterwards A, who was the grandfather
of said minor children, having knowledge of the facts, and for the
purpose of procuring the full proceeds of said sale for said chil-
dren, made a voluntary application for their guardianship, and on
the day of his appointment brought suit, as such guardian, against
D, on his bond, setting out the sale and the receipt by D of the
purchase money, alleging the failure to pay over the full amount
so received, and asking a judgment for 1,500 dollars, which the
company insisted was an affirmation of the judicial sale, and
estopped A from maintaining his suit.

*Held*, that the said paragraph was not good as a plea in estoppel, be-
cause it did not show that the T railroad company purchased the
lot, or paid the consideration therefor, on the faith of some act or
statement of A, or of his silence under circumstances that required
him to speak and disclose his title, nor any act of said A subse-
quent to such purchase, which amounted to a ratification of the
sale made by D.

CONTINUANCE.—An affidavit for a continuance stated that F would
testify that A sold the lot in question to G, by title bond, and gave

possession; that *G* transferred the bond and the possession to *C*, who settled, satisfied and fully discharged the full amount of the purchase money to *A;* that at the time of the sale of the lot to the *T* company *A* was absent from the State, and his wife, *M*, was his constituted agent, having full authority from him to attend to and manage all his business; that she had full knowledge of the said sale, and of the payment by the company of the purchase money, and was, at the time, consulted by the agents of the company as to the title of *C*, and set up no claim for *A*, but by her conduct, actions and representations induced said agents to believe that *A* could set up no claim to the said lot; and that relying upon such silence, conduct and representations, the company made the purchase and paid the money, &c.; that *F* was colonel of the 85th regiment in active service, and was then in the State of *Tennessee;* and that his deposition had not been taken, because, for more than six months, he had been moving from place to place in the discharge of his military duties, so that the defendant could have no assurance that he would remain at any one place sufficiently long to give reasonable notice to the plaintiff, &c.

*Held*, that as there was a paragraph of an answer, if not more than one, under which the proposed evidence would seem to have been legitimate, the continuance should have been granted.

APPEAL from the *Vigo* Circuit Court.

WORDEN, J.—Complaint by *Norman* against the company for the assessment of damages, on account of the taking by the company, for the use of her road, of a lot in *Terre Haute* belonging to the plaintiff. The proceedings were had under the act of 1855 providing for such assessment. 1 G. & H. 528–9. Issue, trial, finding and judgment for the plaintiff.

A demurrer was sustained to the 6th paragraph of the answer. That paragraph alleged the following facts: That in the year 1852 one *Lewis P. Schoovee,* being in possession of the lot and claiming the ownership thereof, with the full knowledge of *Norman*, died, leaving a widow and minor heirs; that one *John Sibley* was appointed by the proper

Court guardian for said heirs, who filed his petition in the *Vigo* Court of Common Pleas for the sale of the interest of said heirs in the lot in question, procured an order of sale, sold the lot to the defendant at the full appraised value, reported the sale to the Court which was approved; that the defendant paid the purchase money in full; that a deed was ordered and executed, and approved by the Court; that said guardian afterwards made a final settlement of his said trust and obtained a discharge therefrom; that afterwards the said plaintiff, who was the grandfather of said minor children, having knowledge of the facts, and for the purpose of procuring the full proceeds of said sale for said children, made a voluntary application for their guardianship, and on the day of his appointment brought suit, as such guardian, against *Sibley* on his bond, setting out the sale and the receipt by *Sibley* of the purchase money, alleging a failure to pay over the full amount so received, and asking a judgment for 1500 dollars, which the company insists is an affirmation of the judicial sale, and an estoppel of *Norman* in this suit.

It is claimed by the appellant that the facts thus alleged should estop the plaintiff to maintain this proceeding, and consequently that error was committed in sustaining the demurrer.

We are of opinion that the facts pleaded do not constitute an estoppel. It may be admitted that a party who has expressly, or by his acts, waived his title to property, will be estopped from asserting it against a party who has invested his money on the faith of such waiver. *Laney* v. *Laney*, 4 Ind. 150; *Gatling* v. *Rodman*, 6 Ind. 289.

But to constitute an estoppel *in pais*, it may be stated as a general proposition that the party to be estopped must, either by himself or some one authorized to act for him, have done some act, or made some statement, or remained silent under circumstances that required him to speak, on the faith of

which act, statement or silence the other party has been induced to invest his money or change his position. *Beach* v. *Mitchell*, 14 Ind. 397; *Carter* v. *Harris*, 16 Ind. 387; *Ray* v. *McMurtry*, 20 Ind. 307.

The pleading here does not show that the defendant purchased the lot, or paid the consideration therefor, on the faith of any act or statement of the plaintiff, or of his silence under circumstances that required him to speak and disclose his title. All that the plaintiff has done which has the semblance of a waiver of his title has been done since the defendant made the purchase and paid for the lot. The case of *Wiseman* v. *Macy*, 20 Ind. 239, cited by the counsel for the appellant, does not sustain the pleading in question. On the contrary it harmonizes with the proposition above stated. In that case a widow, entitled to dower in the half of a certain lot, was the guardian of her child, who owned the inheritance. Under an order of the Probate Court she, as such guardian, sold the entire half lot, received the purchase money and made a deed, without reserving or disclosing her right of dower, the purchaser being ignorant thereof. She was held to be estopped from afterward setting up her right of dower. Her conduct in selling the entire half lot without reservation or disclosure of her interest, brings the case very clearly within the proposition stated.

But there is a class of cases in which it is held that an estoppel may arise upon matter that transpires after the purchase, and on the faith of which the purchaser did not make his investment. Thus, if one's land be sold, either by an authorized agent, or under color of judicial proceedings or other authority of law, and he afterwards receive the proceeds of the sale, or a part thereof, knowing the facts, he is held to be estopped from disputing the validity of the sale. *Smith* v. *Warden*, 19 Penn. S. R. 424; *The State* v. *Stanley*, 14 Ind. 409. The case of *Smith* v. *Warden* was thus: A man

died owing a debt, and leaving heirs and some land. A judgment was recovered against his administrator for the debt, but the heirs were not made parties. On this judgment the land was sold. It was held that although no title passed by the sale because the heirs were not parties, yet one who received her portion of the surplus after paying the debt was estopped to dispute the validity of the sale. In the case of *The State* v. *Stanley*, the school land of the inhabitants of a township had been sold by the proper officer. The inhabitants had received the proceeds, which had been applied to the purposes intended by the original grant of the land to the inhabitants of the township. They were held estopped to dispute the validity of the sale. But in these cases the land was sold as the land of the parties held to be estopped by the receipt of the proceeds, and the proceeds were received in virtue of such original ownership.

The estoppel would only seem to preclude a party from contesting the validity of proceedings whereby the title of such party is transferred, or attempted to be transferred, to the purchaser.

Where a sale and conveyance do not profess or attempt to transfer any title from a person, who afterwards receives the proceeds in virtue of some other claim to them than as the original owner of the land, it is difficult to see on what substantial ground he can be held estopped, by such receipt, from setting up his own title; a title never attempted to be transferred.

If it be said that by such receipt of the proceeds, the party receiving them ratifies the sale, it may perhaps be successfully answered that a ratification only makes good that which purports to have been done; and as the sale in such case does not purport to divest the party thus receiving the proceeds of his title, his ratification of such sale can not have that effect.

But the law on the subject of ratifying that which has been done by another, has no application whatever to such case, and therefore can not furnish a basis on which to rest an estoppel. It is undoubtedly true that a man may ratify an act done for him or in his name, although done without previous authority, and such ratification makes the act as valid and as binding upon him as if done with his previous authority. *Commercial Bank of Buffalo* v. *Warren*, 15 N. Y. 577. But this principle only applies where the act was done for or in the name of the party who thus makes it good by way of ratification. *Wilson* v. *Tumman*, 46 E. C. L. 235. In that case the Court say, "that an act done for another, by a person not assuming to act for himself, but for such other person, though without any precedent authority whatever, becomes the act of the principal if subsequently ratified by him, is the known and established rule of the law. In that case the principal is bound by the act, whether it be for his detriment or his advantage, and whether it be founded on a tort or on a contract, to the same extent as by and with all the consequences which follow from the same act done with his previous authority. Such was the precise distinction taken in the year-book, 7 Hen., 4 fo. 35, that if the bailiff took the heriot, claiming property in it himself, the subsequent agreement of the lord would not amount to a ratification of his authority as bailiff at the time; but if he took it at the time as bailiff of the lord, the subsequent ratification by the lord made him bailiff at the time. In the case of *The Farmer's Loan and Trust Co.* v. *Walworth*, 1st. N. Y. 433, 444, the Court say, in speaking of the case of *Wilson* v. *Tumman*, *supra*, "It is undoubtedly a general rule, as was said in that case, that a man can not adopt an act which was neither done for him, nor in his name.

The case of *Heath* v. *Clinton*, 12 M. & W. 631, is a strong one to show that a man can not ratify an act which was not

done for him or in his name. There were three executors of an estate. Two of them made a contract with a third person, in their own names, for the collection of rents due the estate. It was held that an action would not lie against such third person for rents thus collected by him, in the name of the three executors, unless it was shown that the contract was made on behalf of all the executors, and not on behalf of the two only who made the contract. *Parke, B.,* in delivering the judgment of the Court, says: "But then it was agreed that although the contract was with two only, the third executor might adopt it, and all three sue upon it; and it is clear that he might have done so if the two had employed the defendant, and the defendant had contracted with them on their own account, and as agents for the third executor, on the principle expressed in the legal maxin, *omnis ratihabitio retrotrahitur et mandatur prior aequiparatur.* But if the contract was with the two on their own account only, they could not; for to such a case the maxim does not apply."

In 1 Am. Lead. Ca., 3d ed., p. 572, the rule deducible from the authorities is thus stated: "And though to be capable of ratification, an act must have been done for, or on behalf of, the principal, yet it is not necessary that any relation of agency should previously have existed; for if a perfect stranger assumes to act for a party the latter may adopt his agency with an effect equivalent to a previous authority."

Now, applying the doctrine to the case before us, it is clear that *Norman* can not be divested of the title on the ground of ratification, for the sale by the guardian was not an act which he could ratify; the guardian was not acting for him nor professedly selling his land. Had the land, either by a judicial or a private sale, been sold as the land of *Norman,* there would have been, perhaps, such an acting on his behalf as would have made the transaction susceptible of a ratification by him.

We have thus far considered the case as if *Norman* had actually received the money as such guardian, instead of having sued for it merely.   And aside from the consideration already stated, there is another ground on which it is clear that he would not be estopped if he had received the money. It is assumed by the counsel for the appellant that *Norman's* claim of the money as such guardian is totally inconsistent with his claim of title to the lot, and that the maxim, "he is not to be heard who alleges things contradictory to each other," should be applied to him.   The law, it is said, in the figurative vernacular of Lord *Kenyon*, does not permit a man "to blow hot and cold" in reference to the same transaction.

But is there really any inconsistency in the two claims? We think not.

There is no warranty of title in judicial sales.   *Morgan* v. *Fencher*, 1 Blackf. 10, and notes.   Nor in private sales of land unless there are covenants of warranty.   *Laughery* v. *Mc-Lean*, 14 Ind. 106; *Johnson* v. *Houghton*, 19 Ind. 359.   *Sibley*, the former guardian, was not liable to refund the purchase money to the defendant in the case of an eviction by a para-mount title.   If he had any money in his hand arising from the sale, unaccounted for, his former wards were entitled to it, and he was both morally and legally bound to pay it to them.   He can not be heard to say that he should not account to them for the money on account of the failure of title. The wards were entitled to the money although the title failed, as the purchaser bought such, and only such title as they had.   *Norman*, as their guardian, had a right to sue for and receive the money from *Sibley*, the former guardian.   Such suit, and the receipt of the money, does not affirm on behalf of *Norman* that any title had passed by the sale.   He had a right to receive the money whether any title passed or not. Hence there is no inconsistency whatever in his claim of the

money and his claim of title to the lot. The demurrer was correctly sustained.

Before the trial the defendants moved for a continuance, and filed the affidavit of *William E. Hendricks* in support of the motion. The motion was overruled, and exception taken.

The affidavit states that *Col. Baird* would testify that *Norman* sold the lot in question to one *Ganier* by title bond, and gave him possession; that *Ganier* transferred the bond and the possession to *Schoovee,* who settled, satisfied, and fully discharged the full amount of the purchase money to *Norman;* that at the time of the sale of the lot to the company *Norman* was absent from the State, and his wife, *Matilda,* was his constituted agent, having full authority from him to attend to and manage all his business; that she had full knowledge of the said sale and of the payment by the company of the purchase money, and was at the time consulted by the agents of the company as to the title of the said *Schoovee,* and set up no claim for *Norman,* but by her conduct, actions and representations induced said agent to believe that *Norman* could set up no claim to the said land, and that relying upon such silence, conduct and representations, the company made the purchase and paid the money; that *Baird* is colonel of the 85th regiment, in active service, and is now in the State of *Tennessee,* and that his deposition has not been taken, because for more than six months he has been moving from place to place in the discharge of his military duties, so that defendant could have no assurance that he would remain at any one place sufficiently long to give reasonable notice to the plaintiff. And that *Cruft* would testify that he was President and acted for the company in the purchase of the lot, and was familiar with all the facts; that he would testify as to the sale by *Norman* to *Ganier* of the lot by title bond, by *Ganier* to *Schoovee,* and the full payment of the purchase

money by *Schoovee* to. *Norman;* that before the purchase by the company *Cruft* asked *Mrs. Norman,* who was the agent of the plaintiff, whether *Norman* had any interest in the lot, and that she then said that he had no interest in the lot, and induced him, upon the said representations, to buy the lot for defendant; that *Cruft* has been for the last six months in the active service of the *United States,* in the State of *Tennessee.* That affiant believes the facts stated to be true, and that defendant was unable to prove such facts by any other witness whose testimony could be so easily procured; that defendant has not been able to take the deposition of *Cruft,* for the reason that he has been engaged in the active operations in the field, and changing about from point to point in the States of *Kentucky* and *Tennessee,* and that he expected to have depositions of both witnesses at the next term of Court.

There was a paragraph of an answer, if not more than one, under which the proposed evidence would seem to have been legitimate, and we think the contiuance should have been granted. We have no brief for the appellee and are not advised on what ground the continuance was refused. We see no substantial objection to the affidavit, and think that a case was presented that entitled the defendant to a continuance to enable her to procure the evidence mentioned. For the refusal of the continuance the judgment will have to be reversed.

*Per Curiam.*—The judgment is reversed, with costs.

*Ballard Smith,* for the appellant.