Filed June 20, 1885.

———————◆———————

No. 11,879.

## MAXON ET AL. *v.* LANE ET AL.

DEED. — *Burdens as Conditions of Grant Running with Land Conveyed.* — A deed from A. to B. for a tract of land contained the following: "Also, convey water to the amount of 600 inches, to be furnished from the head-race of the flouring-mill of said Voisinette (A.); said supply of water to be constant and perpetual. The said grantees (B.) hereby agreeing to assist in keeping up the dam in proportion to the amount of water used by them, and to construct and keep in order their own race."

*Held,* that the stipulation in the deed, that B. should contribute to the keeping up of the dam, imposed a burden which was a condition of the grant of the water, and runs with the land, and a purchaser from B. of the land and water rights takes them subject to the burden.

SAME.—*Mortgage Subject to Burden.*—C., the purchaser from B., of the land and water rights conveyed to him by A., executed to D. a mortgage upon the same land and water rights, containing the same description and stipulation.

*Held,* that the mortgage covered the land and water rights, but subject to the same burden.

SAME.—*Rights under Mortgage not Affected by Subsequent Contract to which Holders are not Parties.*—Subsequent to the execution of the mortgage, C, the mortgagor, and L. & L., other grantees of A., entered into a contract which seems to have been entered into as an interpretation of the grant of water and of the burden imposed by the deed from A. to B. The holders of the mortgage were not parties to this contract.

*Held,* that they are, therefore, not affected nor bound by it.

SAME. — *Pleading. — Counter-Claim. — Estoppel.* — The mortgage was upon record at the time the contract was entered into. It had been assigned for value to S. and S. who owned the principal part of the stock of the corporation, C., and were the business managers of its affairs. While thus owning and holding the mortgage, they signed its name to the contract. Afterwards and for value they assigned the mortgage to plain-

tiffs. In the counter-claim by L. & L. there is no averment that S. and S. did anything, said anything, concealed anything, or omitted anything, that did, or might in the least influence or induce the other parties to enter into a contract with C. that they would not otherwise have entered into, nor is there an averment that the other contracting parties were ignorant of the fact that S. and S. owned the mortgage.

*Held,* that the facts stated in the counter-claim are not sufficient to affect the rights of S. and S. and their assigns, under the mortgage, nor to estop them from asserting those rights.

From the Elkhart Circuit Court.

*J. M. Vanfleet,* for appellants.

*H. D. Wilson* and — *Davis,* for appellees.

ZOLLARS, J.—On the 13th day of March, 1873, the Ball & Sage Wagon Company executed a note and mortgage to Sarah Rawling, which latter was recorded on the 10th day of April of that year. On the 15th day of April, Sarah Rawling and her husband duly endorsed the note and mortgage to M. G. and W. Sage, and they endorsed them to appellants. Appellants brought this action to recover judgment upon the note, and a decree foreclosing the mortgage. The Ball & Sage Wagon Company, and Jacob C. Lane and Clark Lane were made defendants. The wagon company made default, and a judgment and decree were rendered against it.

Following a specific description of land, there is this further description in the mortgage of the interest covered by it: "Also, water power to the amount of six hundred inches of water to be furnished from the head-race from the mill of Vincent Voisinette, in manner and condition in deed of said Voisinette to Hiram H. Allen and others."

In the complaint, there are these averments as against the Lanes: "Said Clark Lane and said Jacob C. Lane, as his assignee, hold a certain written contract with said Ball & Sage Wagon Company, executed the 23d day of January, 1874, imposing certain heavy burdens and encumbrances on the real estate described in said mortgage, and now, in order to cut off and foreclose all their rights in and to said real

estate, given by virtue of said written contract, they are made parties hereto."

After the rendition of the judgment and decree against the wagon company, a sale under the decree, and the purchase of the premises by appellants, they filed a supplemental complaint, setting up these facts, and asking a decree against appellees, that on foreclosure against them they be required to redeem within a year without further sale.

The first question presented here arises upon a counter-claim filed by appellees. The counter-claim is based upon the contract referred to in the complaint between the Ball & Sage Wagon Company and appellee Clark Lane.

Under a "whereas," the contract recites that in July, 1868, Vincent Voisinette executed a deed to H. H. Allen and others, having in it the following: "Also, convey water to the amount of 600 inches, to be furnished from the head-race of the flouring-mill of said Voisinette; said supply of water to be constant and perpetual. The said grantees hereby agreeing to assist in keeping up the dam in proportion to the amount of water used by them, and to construct and keep in order their own race." It is further recited, in an indefinite way, that by purchase and deed, the Ball & Sage Wagon Company had succeeded to the rights and liabilities granted and imposed by the deed from Voisinette to Allen and others; and that Voisinette had conveyed to Clark Lane certain real estate, and all of the water power except thirty-six horse power. Under another "whereas," it is recited that the several parties interested in the water power intended to commence the improvement of the same, and to pay in their due and proper proportion, and be responsible in the same proportion for all costs and damages that might result to others by reason of making the contemplated improvements. Still further, as follows: "And whereas, It is therefore necessary to define, distinctly and definitely, what shall forever hereafter be construed and admitted to be the true intent and meaning of 600 inches of water, as before named in the said conveyance, and to fix

the per cent. or proportion that the said Lane and the said Ball
& Sage Wagon Company, respectively, shall pay toward the
construction of said improvements, and, also, that they, for
themselves, their heirs and assigns, agree shall forever after
be binding upon them."

It is then agreed that the water shall be passed to the Ball
& Sage Wagon Company through an aperture ten by sixty
inches; that Lane and the wagon company shall build a dam
across the river at a point near the old one; build embank-
ments, fix the channel, etc. Toward the expense of building
the dam, etc., the Ball & Sage Wagon Company binds itself
and assigns to pay the one-tenth of the cost of the dam, the
one-tenth of keeping it in perpetual good order and repair,
and one-tenth of the damages that may result to others by
the overflow of lands. After a stipulation that Farvard &
Little, who seem to have some interest, shall pay one-six-
teenth of said amounts, it is agreed that Lane shall pay the
balance, etc.

It is averred in the counter-claim that Jacob C. Lane had
become the owner of the dam and all the lands and water
power, subject to the exceptions as set forth in the contract,
and that he had become the owner of the contract, and bound
by its provisions, and that it created a perpetual lien upon,
and a covenant running with the land covered by the mort-
gage. It is further averred that the deed from Voisinette to
Allen and others, dated July, 1868, the conveyance to the
Ball & Sage Wagon Company, and the deed to Lane from
Voisinette, as set forth in the contract, were all properly re-
corded, and the contents, terms and covenants known to
Sarah Rawling at, and prior to, the execution of the mort-
gage, and to her assigns, Sage and Sage, and to the plaintiffs.
It is further averred that Sage and Sage, " while the principal
owners and business managers of said corporation, to wit,
the Ball & Sage Wagon Company, purchased said mortgage
and note, and that while being such business managers, and
while so owning such note and mortgage, they, for said com-

pany, executed the contract hereinbefore set forth;" that the dam and the water power afforded by means of it are of the value of $40,000, and that the expense of keeping up the dam is, and will be, $10,000 per year. It is further averred that appellants well knew all of the foregoing facts at the time, and long before they purchased the mortgage, and purchased it for the purpose and with the intent to destroy appellee's rights and interests.

It is alleged still further, that an irreparable injury will result to appellee Jacob C. Lane if his rights under the contract are destroyed by the foreclosure of the mortgage. Prayer that the foreclosure be subject to his rights under that contract.

The counter-claim is, evidently, not the result of the pleader's best efforts, as it and the contract upon which it is based leave in uncertainty and to conjecture what ought to have been made plain. It is inferable, that the deed from Voisinette to Allen and others, granting the water, also conveyed the land covered by the mortgage, and that the land is near to the head-race from which the water was granted, and yet not abutting upon it. It is also inferable that the Ball & Sage Wagon Company received a deed from Allen and others, conveying to it what they had received from Voisinette; that Clark Lane, by grant from Voisinette, had become the owner of the main water power, and the head-race from which the water to the wagon company was to be furnished, and that Jacob C. Lane, by deed from Clark Lane, had become the owner of the water power and head-race. For the purposes of this opinion, we treat these inferences as facts, but do not intend to establish as a rule that inferences can take the place of facts in pleading. But, thus treating the counter-claim, it is yet fatally defective. The stipulation that the grantees in the deed from Voisinette to Allen and others should contribute to the keeping up of the dam, imposed a burden which was a condition of the grant of the water, and runs with the land. A purchaser of the land and

water rights under that deed takes them with the burden. This was evidently the intention of the parties, and is the reasonable construction of the terms of the deed. *Conduitt v. Ross, ante,* p. 166. The land and the water rights, with the burden imposed, seem to have passed to the Ball & Sage Wagon Company, and the same are covered by the mortgage to Sarah Rawling, which is the mortgage in suit. What was meant by six hundred inches of water is not defined in the deeds nor mortgage, nor is the amount to be paid by the grantees in keeping up the dam stated, except that it shall be in proportion to the water granted. But whatever water was thus conveyed, and whatever the burden imposed may be, they are covered by the mortgage. Appellants, as the owners and holders of the mortgage, have the right to hold, and take in under it, all that it covers, unless by some subsequent contract or some other act or omission, they are estopped to assert that right. Neither Sarah Rawling, M. G. and N. Sage, nor appellants have executed such a contract. The contract of 1874 was executed by Lane and the Ball & Sage Wagon Company. That contract, of itself, therefore, can not affect the rights of the mortgagee or his assigns. It seems to have been made, in some sense, as an interpretation of the grant of water and the burden imposed by the Voisinette deed, but the mortgagee and holders of the mortgage are not bound by such interpretation unless they are in some way estopped to controvert it. In the absence of such estoppel, they have a right to be heard as to what the grant and burden are, and are not bound by the interpretation made by others in their absence. Whether or not the contract of 1874 would add to or lighten the burden imposed by the Voisinette deed, we need not now undertake to decide. It is enough that neither appellants nor their assigns were parties to it. Is there then anything averred in the counterclaim sufficient to constitute an estoppel as against appellants? It is not entirely clear that there was an attempt to

assert anything in the way of such an estoppel. It is averred that the deeds were upon record, and were notice to Sarah Rawling, M. G. and N. Sage, and appellants. From these, of course, they had notice of the grant of water and the burden imposed. This notice would estop them to deny the burden imposed by the deeds, but nothing more. These deeds of record would not be notice of any subsequent contract, nor of any interpretation of the original grant and burden.

It is further averred that Sage and Sage, while the principal owners and business managers of the Ball & Sage Wagon Company, a corporation, purchased the note and mortgage, and that while such owners and business managers, and while the owners of the note and mortgage, they, for the Ball & Sage Wagon Company, executed the contract of 1874. Just how Sage and Sage were the principal owners is not stated. We presume that the intention was to allege that they owned the principal part of the stock. Let this be granted, and still there is nothing here to work an estoppel against Sage and Sage. The mortgage was upon record, and for aught that appears the Lanes had notice of its contents. And for aught that appears they knew that Sage and Sage were the owners and in possession of the mortgage at the time the contract was made with the wagon company in 1874.

It is plain that Sage and Sage are not the wagon company. The latter is a corporation; the former seem to have been partners. That they may have owned a majority of the stock in the corporation, and were its business managers, does not make them and the corporation one, nor bind one by the contracts of the other. We know of no reason why Sage and Sage might not own the mortgage the same as any other person, nor why, in the absence of fraud or unfair dealing, they should not be protected against any contracts that the wagon company might make, which might affect the mortgage security. And the fact that they knew that the wagon company was making such a contract, if that of 1874 were such, and the fact that they acted for the company in consummating the con-

tract would not, alone, destroy or affect the mortgage in their hands.

As we have said, for aught that is averred in the counter-claim, the Lanes had actual knowledge of the contents of the mortgage, and knew that Sage and Sage owned it when the contract of 1874 was made. If so, they did not contract in ignorance, but with their eyes open, and voluntarily took the risk of the consequences, if any serious consequences are to follow. There is no averment that Sage and Sage concealed, or tried to conceal, or that they could have concealed, the contents of the mortgage or their ownership of it. There is no averment that they agreed to cancel their mortgage, modify its terms, or hold it subject to the terms of the new contract, if that contract imposed new conditions, nor that they said anything, or did anything, from which the Lanes might infer such an agreement. There is no averment that they said anything, did anything, concealed anything, or omitted anything that did, or might in the least, influence or induce the Lanes to enter into a contract with the wagon company that they would not have entered into but for the wrong of Sage and Sage. There is no averment that the Lanes were induced to part with their money upon the faith of anything that Sage and Sage did or said, or omitted to do or say, nor that they did part with or expend any money.

All these, and every other element of an estoppel, are wanting in the averments in the counter-claim. It may be that such averments may be made, and such proof adduced, as will estop Sage and Sage, and the appellants as their assignees, and bind them by the contract of 1874.

It would not be proper for us to indicate more than we have as to what averments might be sufficient. It is sufficient here to hold that the necessary averments are not in the counter-claim. Upon the doctrine of estoppel, see *Terre Haute, etc., R. R. Co. v. Norman*, 22 Ind. 63 ; *Snyder v. Studebaker*, 19 Ind. 462 ; *Ray v. McMurtry*, 20 Ind. 307 ; *Lash v. Rendell*,

72 Ind. 475. There are many other cases in the reports in accord with these.

The counter-claim being insufficient, the judgment must be reversed. This conclusion renders it unnecessary for us to examine other questions discussed by counsel.

Judgment reversed, with costs.

