## MEINERS *v.* MUNSON.

HUSBAND AND WIFE.—*Credit Given to Wife.—Agency.—Ratification.*—A person furnished and put upon the house of another a lightning rod, at the request of the wife of the latter, without the knowledge or consent of her husband, she having no authority from him to act as his agent in such transaction, or in any business, and not professing to act as his agent in said transaction, in which no allusion was made to the husband, the account for the work being made out against the wife alone.

*Held,* that the *prima facie* inference arising from these facts was that the credit was given solely to the wife, and, such inference not having been rebutted, that the husband was not liable for said work.

*Held,* also, that, the wife having no authority to act as her husband's agent and not professing to so act, the contract could not be ratified by the husband as principal.

From the Marion Superior Court.

*D. V. Burns,* for appellant.

*J. W. Nichol* and *L. Jordan,* for appellee.

WORDEN, J.—Action by the appellee against the appellant, for the value of certain lightning rods furnished by the plaintiff, and by him put upon the house of the defendant, and to enforce a lien therefor. The complaint alleges, "that on the —— day of——, 1873, he" (the plaintiff) "furnished to said defendant, at the request of defendant's wife, and that the defendant ratified and affirmed the same, and retained two hundred feet of lightning rod, at and for the price of seventy-five dollars; that he placed the same on the dwelling-house of said defendant," etc. With the complaint was filed the following bill of particulars, viz.:

"INDIANAPOLIS, IND., 8th September, 1873.

"Mrs. C. Meiner to David Munson, manufacturer of lightning rods, Dr.

"May 15th, to 200 feet of lightning rods, 37.50, $75.00."

Issue was joined, and the cause tried by the court, resulting in a finding and judgment for the plaintiff. The judgment was affirmed at general term below, and appeal is taken to this court. The following was the evidence in the cause:

W. O. Gardner, being sworn, testified:

"Was working for the plaintiff in May last, putting up lightning rods; while passing house of defendant, his wife called me in and told me to fix the lightning rod on the house, that it was broken. I examined the old rods, and told her they couldn't be fixed, but that I would put her on new ones. She asked what it would cost; told her I did not know; she said, ' Fix it right and safe.' I then put on two hundred feet of new rods. It was worth seventy-five dollars. The account, as set forth in the bill of particulars, is correct; do not know Mr. Meiners; have never seen him."

On cross-examination, he testified:

"Can't tell how much old rod there was on; I put the new all over the house and back on the sheds; there were only two points to the old rod; there are five points to the new; she asked me how much it would cost, but I did not even intimate whether it would cost five dollars or one hundred dollars; gave her no idea as to what it would cost; I don't know what I did with the old rod; we generally take them away; they are not worth anything."

David Munson testified:

"I am the plaintiff; I know nothing about the case, except that I have seen the rods on the house, and that the account is not paid; I deliver the rods to the workmen, and take the accounts from their books; have never seen the defendant."

James M. Bryden testified:

"I am engaged with Mr. Munson in the lightning rod business, am his foreman; the rods on defendant's house are properly put on; do not know the defendant."

The defendant introduced the following evidence: Cornelius Meiners testified:

"Am the defendant; was out of the city at the time the rods were put on; I think was out of the city two or three weeks at that time; my wife has been an invalid for years; she is not, and has never been, my agent for the transaction of any business; my daughter has all the care of the house; I have never examined the rods, to see how they are put on, or wherein they differ from the old ones, except that the old ones were only on the front of the house, and these are put back on the sheds, where the house is low; I did not authorize any one to put them on or to have them put on; I do not believe in them very much, anyhow."

On cross-examination, he testified:

"My wife is not my agent for any purpose; she has been unfit to do anything for the last two years; my daughter takes care of the house; I was displeased, when, on coming home, I found the rods on, and so told my wife; she said they wouldn't tell her what it would cost, and that she had ten dollars in the house, out of which she expected to pay the bill; that if she had known it would cost more, she would not have had it done; I never interfered with the rods, and never went to see anything about them."

It was admitted by defendant that if plaintiff recovered judgment, he was entitled to his lien; and this was all the evidence given in the cause.

The question is before us, whether, on this evidence, the plaintiff was entitled to recover.

It seems that the plaintiff's agent, Gardner, on being requested by the defendant's wife to fix the old rod, which was broken, told her it could not be done, but suggested, with ready business tact, that he could put on new ones; and on being told by her to "fix it right and safe," put new rods "all over the house and back on the sheds," having

five points, instead of two, at the same time keeping her in ignorance of the cost by telling her he did not know, and not intimating to her whether it would cost five dollars or a hundred. The transaction, as testified to by Gardner, though it may show him to have been adroit and successful, is not to be commended as an instance of open and fair dealing on his part. Nevertheless, if the plaintiff is entitled by law to hold the judgment, on the evidence, it must be affirmed; otherwise, it must be reversed.

An important question arising on the evidence is, to whom was the credit given? If given solely to the wife, the defendant cannot be held liable. 1 Chitty on Cont., 11th Am. ed., 236; *Jenkins* v. *Flinn*, 37 Ind. 349. There is nothing in the evidence that tends to show that credit was given to the husband. The husband was not alluded to, or his name, mentioned in any way, so far as appears, during the transaction. Gardner was passing the house, when the defendant's wife called to him and requested him to fix the old rod. He told her it could not be fixed, but he could put on new ones. She then said, after inquiring about the cost, but getting no light on that subject, "Fix it right and safe." Without any further conversation between the parties, Gardner proceeded to embellish the house all over, and back on the sheds, with a multitude of new lightning rods. So far from there being any evidence that the credit was extended to the husband, no allusion whatever was made to him, nor, indeed, does it appear that Gardner, at the time, knew that the defendant's wife had a husband at all. On the contrary, the evidence, unexplained, establishes pretty clearly that the credit was given to the wife. As has been seen, the bill of particulars accompanying the complaint was made out against her. Gardner swore that the account set forth in the bill of particulars was correct. Munson testified that he knew nothing about the case, except that he had seen the rods on the house, and that the account was not paid; that he delivered the rods to the workmen, and took the accounts from their books. It thus appears that the charge was made by

the plaintiff through his agent, Gardner, to Mrs. Meiners, and not to the defendant. This, it seems to us, was *prima facie* evidence, though not conclusive, that the credit was given to Mrs. Meiners alone. See *Connolly* v. *Kettlewell*, 1 Gill, 260; *Leland* v. *Creyon*, 1 McCord, 100; *Swift* v. *Pierce*, 13 Allen, 136. We find nothing in the evidence to rebut the inference thus to be drawn.

But there is another and perhaps more conclusive reason why the evidence is insufficient to sustain the finding. It was not claimed in the complaint that the defendant's wife was authorized by him to have the lightning rods put on the house, but it was alleged that the defendant ratified and affirmed the act. The whole case proceeded on the theory of a ratification. We shall not discuss the question whether the failure of the defendant to pull down the rods, or notify the plaintiff of his dissent, amounted to a ratification. There is another point, which, under all the authorities, as applied to the facts of the case, is fatal to the supposed ratification. We have already seen that the contract, if such contract were made by Mrs. Meiners, by virtue of which the rods were put up, was not made in the name of, or for, or on behalf of her husband; that her husband was not mentioned or in any way alluded to. She dealt, in every respect, as if dealing for herself alone, and not for her husband or any one else.

The rule of law is, that a ratification can only be effectual between the parties, when the act is done by the agent avowedly for or on account of the principal, and not when it is done for or on account of the agent himself, or of some third person. Story on Agency, sec. 251 *a*, and authorities there cited. It is said, in 1 Chitty on Cont., 11th Am. ed., 293, "But where the party making the contract had no authority to contract for the third person, and did not *profess*, at the time, to act for him, it seems that the subsequent assent of such third party, to be bound as principal, has no operation."

This doctrine has been recognized and acted upon by this

court.   *The Terre Haute, etc., R. R. Co.* v. *Norman,* 22 Ind. 63.   Mr. Parsons says, in speaking of a contract entered into by a wife without the authority of her husband, and not professing to act for him, that "we may add that such a case would perhaps fall within the rule, that no act is capable of ratification by the principal which was not performed by the agent *as agent,* and in behalf of the principal." 1 Parsons Cont. 346.

For these reasons, we are of opinion that the judgment below must be reversed.

The judgment below is reversed, with costs, and the cause remanded, with instructions to the court below at general term, to reverse the judgment rendered at special term, and remand the cause to special term for a new trial.