**Mary BARTROM, Appellant
(Defendant Below),**

v.

**ADJUSTMENT BUREAU, INC.,
Appellee (Plaintiff Below).**

No. 02S04–9307–CV–763.

Supreme Court of Indiana.

July 20, 1993.

David J. Avery, Fort Wayne, for appellant.

Norman S. Snow, Paul O. Sauerteig, Fort Wayne, for appellee.

SHEPARD, Chief Justice.

We grant transfer in this case to consider the vitality of the doctrine of necessaries in this age when multiple statutes impose duties of support on spouses.

Appellee Adjustment Bureau is the assignee of a $67,637.75 claim for medical services provided by the Bureau's assignor, St. Joseph Medical Center, to appellant's late husband, Howard J. Bartrom. Howard and appellant Mary Bartrom were married on January 26, 1979. On or about June 24, 1989, Mary removed herself and the three minor children of the marriage from the marital residence due to Howard's repeated abuse of alcohol and repeated acts of physical and mental abuse towards her. Thereafter, the couple did not cohabitate nor did Howard pay child support or maintenance. On July 19, 1989, Mary filed a petition for dissolution of the marriage.

On July 27, 1989, an automobile accident rendered Howard comatose, and he was immediately taken to St. Joseph Medical Center. Soon thereafter representatives of the hospital contacted Mary requesting

that she execute an agreement to pay for the treatment of her husband, which request she refused. Mary never visited Howard during his hospitalization and refused to participate in discussions concerning the withdrawal of his life support. Howard remained at St. Joseph's until August 25, 1989, when he succumbed to his injuries without ever regaining consciousness.

After Howard's only assets—real property valued at $8,000—vested in Mary by right of survivorship, his estate was closed without satisfaction of the St. Joseph's debt. Unable to recover from Howard's estate, St. Joseph's assigned its claim to the Adjustment Bureau which then sought payment from Mary personally. Mary once again disclaimed responsibility, and this suit was commenced.

Following cross motions for summary judgment, the trial court reluctantly found for the Adjustment Bureau and entered judgment against Mary in the amount of $79,812.55. While opining that governing Indiana precedent requires "tragically unfair" results, the court nonetheless felt Mary would have to secure from the appellate courts "a change in the common law before she could avoid liability." The Court of Appeals obliged by a divided vote; it reversed and remanded with instructions to grant Mary's motion for summary judgment. *Bartrom v. Adjustment Bureau* (1992), Ind.App., 600 N.E.2d 1369.

### I. Evolution of the Necessaries Doctrine

**A. The Original Doctrine.** The doctrine of necessaries was developed to obviate some of the victimization which coverture would otherwise have permitted. While in the state of coverture, a woman lost the capacity to contract, to sue, or be sued in her own right. *Henneger v. Lomas* (1896), 145 Ind. 287, 44 N.E. 462. Her husband acquired control over her real property and the right to income from it, an interest which his creditors could attach. *Cox's Adm'r. v. Wood* (1863), 20 Ind. 54. Coverture denied the wife the legal ability to purchase food or clothing on credit, rent or buy shelter, or even contract for medical services. *See O'Daily v. Morris* (1869), 31 Ind. 111. In short, it stripped a married woman of virtually all means of self-support.

The common law duty of a husband to support his wife has been explained both as a counterbalance to these legal disabilities and as compensation for his right to her earnings and services. *See, e.g., Orr v. Orr*, 440 U.S. 268, 279 n. 9, 99 S.Ct. 1102, 1112 n. 9, 59 L.Ed.2d 306 (1979). Thus, while the law prohibited a wife from contracting for medical care should she become ill, it imposed a duty on the husband to do so for her, at least to the extent his means permitted. *Cf. City of Terre Haute v. Pigg* (1940), 108 Ind.App. 68, 73, 27 N.E.2d 137, 139. Even this arrangement, however, had drawbacks apparent to common law courts, not the least of which was the peril at which it placed wives whose husbands were disinclined to honor their support obligations. Imagine, for example, the plight of a gravely ill woman denied by law the ability to hire a doctor and married to a man who refused to do so for her. In time, the common law developed the doctrine of necessaries as a mechanism by which the duty of support could be enforced. *See, e.g., Scott v. Carothers* (1897), 17 Ind.App. 673, 676–77, 47 N.E. 389, 390.

Under the common law doctrine, if a husband refused to supply his wife with necessaries she was authorized to purchase them on his credit, making him liable to the supplier for their costs. *Id.; Watkins v. DeArmond* (1883), 89 Ind. 553, 554. Notably, the doctrine was designed to serve not as a free-standing cause of action for wives but as a self-help remedy. The circuitousness of this approach likely stems from the difficulties attendant to fashioning a private remedy for spousal non-support in a legal system which forbade a wife to maintain an action at law against her husband. *See Brooks v. Robinson* (1972), 259 Ind. 16, 18, 284 N.E.2d 794, 795. It is sometimes said that the doctrine rests on the laws of agency; in truth it transcends such analogies, for a husband's liability was not dependent upon his consent or even upon the apparent authority of his wife. *Cf. Litson*

*v. Brown* (1866), 26 Ind. 489, 491.[1] Instead, liability was based on principles of restitution and quasi-contract, inferred from the nature of the wife's condition inasmuch as she had no property and was legally dependent on her husband. *Id.;* Schouler, *supra* note 1, at 106.

*B. Modern Changes in Necessaries.* As reverberations from the lifting of coverture[2] slowly resounded through the common law, the underpinnings of the doctrine of necessaries began to give way. In 1980 the New Jersey Supreme Court, believing gender-based liability for necessaries to be both unconstitutional and unjustifiable in an era when many married women work, revised its necessaries rule. *Jersey Shore Medical Center–Fitkin Hosp. v. Estate of Baum,* 84 N.J. 137, 417 A.2d 1003 (1980). The gender-neutral rule it adopted makes the duty of support mutually enforceable by imposing secondary liability on each spouse for the cost of necessaries purchased by the other. This secondary responsibility is activated only if the spouse who originally incurred the debt cannot pay it. *Id.* Once activated, however, full and absolute liability exists whether the non-debtor spouse knew of the purchases, promised to pay for them, or even has the financial resources with which to pay the debt. *Bartrom,* 600 N.E.2d at 1372.

The New Jersey formulation shares the vocabulary but not the underlying rationale of its common law antecedent. Instead,

the *New Jersey* approach is rooted in two "modern" assumptions: (1) that women as a class have made such substantial economic progress that imposition of some legal liability for their husbands necessaries is justified, *Jersey Shore,* 417 A.2d at 1008; and (2) that even though spouses now legally own their incomes and assets separately, most married couples function in fact as economic units. The court extrapolated from these assumptions the conclusion that marital partners' reasonable expectations "are that their income and assets are held for the benefit of the marital partnership and, incidentally, for creditors who provide necessaries for either spouse." *Id.* at 1010.

In *Memorial Hosp. v. Hahaj* (1982), Ind. App., 430 N.E.2d 412, the Indiana Court of Appeals adopted the New Jersey approach *in toto.* It accepted the *Jersey Shore* formulation that marriage is a " 'shared enterprise, a joint undertaking, that in many ways ... is akin to a partnership,' " and that, as such, both the marital partners and their creditors expect the financial resources of the respective spouses to be available for the payment of the necessary debts of the other. *Id.* at 416 (quoting *Jersey Shore,* 417 A.2d at 1010.) Nonetheless, the court said, it would be unfair, "to accord the same rights to a creditor who provides necessaries on the basis of an agreement with one spouse as to a creditor who has an agreement with both spouses." *Id.* (quoting *Jersey Shore.*) The court thus

---

1. This confusion may stem from the fact that a spouse may be held liable on principles of agency for goods purchased by his/her mate. While the relationship between husband and wife does not *ipso facto* make one spouse an agent for the other, the effect of the relationship is to make it more likely that other circumstances will be found to raise the inference of agency. *Moehlenkamp v. Shatz* (1979), Ind.App., 396 N.E.2d 433. If an agency is found to exist, the noncontracting spouse may be liable whether or not the item is a necessary. Homer H. Clark, *The Law of Domestic Relations in the United States* 189 (1968).

On the other hand, when a husband was truly delinquent and his wife thereby deprived of the support owing her, the husband's liability was quite dissimilar from any imposed by the laws of agency:

Wherever the husband neglects to supply his wife with necessaries ... she may obtain what is strictly needful for her support, although it

be against his wishes, on the pledge of his credit. And the person furnishing the articles may sue the husband notwithstanding he has been expressly forbidden to trust her.

I James Schouler, *A Treatise on the Law of Marriage, Divorce, Separation and Domestic Relations* 116 (6th ed. 1921); *accord Scott,* 17 Ind. App. at 677, 47 N.E. at 390.

The distinction between the proofs necessary for each theory is well illustrated by *Allen v. Selig Dry Goods* (1929), 90 Ind.App. 290, 165 N.E. 338, where both were advanced as grounds for recovery.

2. The beginning of the end of coverture in Indiana was the adoption of the Married Woman's Act, ch. LXVII, 1879 Ind.Acts 160–61, now codified at Ind.Code Ann. 31-7-10-1 (West Supp.1992). *See generally Mathes v. Shank* (1884), 94 Ind. 501 (discussing effect of statute).

adopted the secondary liability principle both as a solution to this problem and also to provide "some protection" to the non-debtor spouse.

■■■ *C. Modern Indiana Necessaries.* We think the Court of Appeals was correct when it declined to abolish the doctrine of necessaries as some jurisdictions have done[3] but instead chose to reformulate it in a gender-neutral manner.[4] The notion that the available resources of one spouse ought be used to help support the other should the other become necessitous flows from the nature of the marital relationship itself. *Cf. Aurora Casket v. Ropers* (1947), 117 Ind.App. 684, 75 N.E.2d 680. Furthermore, the duty of spousal support

is clearly embedded in Indiana's modern law of domestic relations. Ind.Code Ann. § 31–1–11.5–11(e) (West Supp.1992) (post-dissolution maintenance), § 31–1–11.5–7(d) (West Supp.1992) (temporary maintenance); Ind.Code Ann. § 31–7–11–1 (West Supp. 1992) (actions for support not attendant to dissolution); Ind.Code Ann. § 35–46–1–6 (West 1986) (failure to support needy spouse a Class D felony). We also agree with the Court of Appeals that each spouse should be held primarily liable on the contracts he or she makes in an individual capacity, whether for necessaries or otherwise.[5]

Although these general points from *Memorial Hospital* seem sound, we reject the

---

3. *See Condore v. Prince George's County,* 289 Md. 516, 425 A.2d 1011 (1981); *Schilling v. Bedford County Memorial Hosp.,* 225 Va. 539, 303 S.E.2d 905 (1983).

4. The gender-neutral approach is more consistent with federal constitutional requirements, *see Jersey Shore,* 417 A.2d at 1007–08, and Indiana decisional law. *See Troue v. Marker* (1969), 253 Ind. 284, 290, 252 N.E.2d 800, 804 ("[T]he change in the legal and social status of women in our society forces us to recognize a change [in the common law]."); *Hunter v. Livingston* (1955), 125 Ind.App. 422, 429, 123 N.E.2d 912, 915 (doctrine of interspousal immunity "contrary to the true spirit and intent of the acts passed for the emancipation of women in an enlightened civilization").

It is also consistent with the approach our legislature has adopted. Historically, alimony was available only to wives. Helen Garfield, *Indiana's Displaced Homemakers,* 23 Res Gestae 80, (1979); *cf. Supreme Council Catholic Benevolent Legion v. Grove* (1911), 176 Ind. 356, 369, 96 N.E. 159 (married women have no duty to support their husbands). Until its repeal by adoption of the Dissolution of Marriage Act, Pub.L. No. 297–1973, § 3, 1973 Ind.Acts 1598, Indiana's alimony statute provided that alimony was to be understood as a "discharge of . . . the husband's obligation to the wife." ch. 120, § 3, 1949 Ind.Acts 313. Indiana's current disposition of property statute, Ind.Code Ann. § 31–1–11.5–11(e) (West Supp.1992), provides for the award of maintenance in favor of either the husband or the wife. *See generally* Unif. Marriage & Divorce Act, Prefatory Note, 9A U.L.A. 149 (1987); Mary Jane Connell, Note, *Property Division and Alimony Awards: A Survey of Statutory Limitations on Judicial Discretion,* 50 Fordham L.Rev. 415, 415–16 (1981) (modern property division statutes reflect fundamental change in society's conception of spousal roles). The statute providing for orders of support was

also amended so as to apply equally to husbands and wives, Ind.Code Ann. § 31–7–11–1 (West Supp.1992), and the criminal non-support statute has been applied against neglectful wives and husbands alike. *See Parrish v. State* (1984), Ind.App., 459 N.E.2d 391.

5. In light of Indiana's Married Woman's Act, any other rule could hardly be asserted. *See* Ind.Code Ann. 31–7–10–1 (West 1992 Supp.) ("All legal disabilities of married women to make contracts are abolished."); Ind.Code Ann. § 31–7–10–4 (West 1992 Supp.) ("Husbands are not liable for the contracts . . . of their wives."). Thus, a wife may bind herself simply by making it clear in her agreement with the seller that she is undertaking to pay the debt from her separate property. *Hickey v. Shoemaker* (1960), 132 Ind. App. 136, 143, 167 N.E.2d 487, 490. *See also* Margaret J. Gates, *Credit Discrimination Against Women: Causes and Solutions,* 27 Vand.L.Rev. 409 (1974) (on importance to women of establishing independent credit).

The common law rule also held that a husband who would have otherwise been liable under the doctrine was not liable if the merchant relied solely on the wife's individual resources in advancing credit. *Meiners v. Munson* (1876), 53 Ind. 138, 141 ("An important question . . . is, to whom was the credit given?"); Schouler, *supra* note 1, at 119–20. This has been called the "whose-credit-was-pledged" limitation. Note, *The Unnecessary Doctrine of Necessaries,* 82 Mich.L.Rev. 1767, 1778–79 (1984) [hereinafter *The Unnecessary Doctrine*]. While we think this to be a legitimate concern when liability is based on agency alone, *cf. Meiners,* 53 Ind. 138 (suit over purchase price of a lightning rod), we agree with the result which obtains under the *Memorial Hospital* approach, namely that the financially superior spouse may not avoid liability for necessaries on the ground that the merchant did not rely on his or her resources when advancing credit.

approach adopted by the Court of Appeals. In championing a mutually enforceable duty of support, the court opined that the modern doctrine of necessaries ought be rooted in the expectations of a married couple that the income and assets of each will be held for the benefit of the other. This ignores the matrix of social, economic and legal factors which so often renders one of the parties to a marriage financially dependent. Protecting such dependent spouses and ensuring their continued sustenance is the objective of Indiana's marital duty of support. We believe the doctrine of necessaries should be viewed not as imposing a mutual obligation but as an aid to the enforcement of this objective. The approach used in *Memorial Hospital* is ill-suited to effectuate this purpose.

The common law doctrine was not punitive but remedial and was designed to put the wife in as good a position as she would have been in had her husband honored his support obligations. Consonant with this function, the notion of necessaries historically was limited by the financially superior spouse's (usually the husband's) ability to pay. *See Allen*, 90 Ind.App. at 295, 165 N.E. at 339. *Cf. Board of Comm'rs of Switzerland County v. Hildebrand* (1849), 1 Ind. 555, 556 (if wife was proper candidate for poorhouse, her husband would not be liable for her stay). If a wife's expenditure exceeded her husband's means, it was not a necessary. The husband could not breach a duty by failing to provide that which he could not afford; thus the husband was released from liability. *See* Clark, *supra* note 1, at 190–91.

The *Memorial Hospital* formulation abandons individualized inquiry into ability to pay in determining what constitutes a necessary. Instead, if the court finds that the expenditure constitutes a necessary "in the abstract," the second spouse is liable for the total amount of the debt irrespec-

tive of the nature or extent of his or her financial resources. *Bartrom*, 600 N.E.2d at 1372. The case of a spouse who cannot provide for his or her mate, however, is certainly distinct from that of a capable spouse who will not. Moreover, we think the *Memorial Hospital* approach adds little to the purchasing power of the necessitous spouse for when the other spouse is also unable to finance the purchase, no formulation of the doctrine of necessaries will entice merchants to extend credit. Finally, we observe that when the debt at issue exceeds the resources of both the contracting and non-contracting spouses, saddling the non-contracting spouse with full liability simply ensures that both will be rendered unable to provide for themselves or their family.[6]

Other aspects of the *Memorial Hospital* extension of secondary liability to dependent spouses for the debts of their financially superior mates contain similar defects. One notable problem stems from the interaction between the duty of spousal support and the policy of independent marital assets. In Indiana marital property is owned separately which means that neither spouse has a legal interest in the income[7] or assets[8] of the other. To a limited extent, the doctrine of necessaries transforms marital property, at least with respect to creditors, from separately owned to communally owned. This "ad hoc system of community property" has been criticized for imposing one of the liabilities of communal ownership—responsibility for the other spouse's debts—without granting any of its benefits, for instance, a legal share in the other's income. Note, *The Unnecessary Doctrine, supra* note 5 at 1792.

In imposing secondary liability on dependent spouses, the *Memorial Hospital* approach not only fails to harmonize the duty of support with the notion of separate marital property but actually exacerbates po-

---

**6.** This is important given that an additional function of the doctrine of necessaries is to prevent spouses from becoming a burden upon the community. *See generally* Schouler, *supra* note 1 at 105–06. The *Memorial Hospital* rule seems more solicitous of the needs of creditors than those of spouses or the public.

**7.** *Kennedy v. Swisher* (1905), 34 Ind.App. 676, 73 N.E. 724.

**8.** *Cf. Bristor v. Bristor* (1883), 93 Ind. 281.

tential incongruities. Under the rule, homemakers are required to share in the family's liabilities but are given no claim on the family's income or assets. Ironically, Indiana law thus becomes a continuous legal gauntlet which couples must brave should they wish to structure their marital obligations along traditional lines, say, one spouse working full-time outside the home and the other within. Justice Abrahamson of the Wisconsin Supreme Court has noted that to say such a rule "favors homemakers or benefits the needy spouse, or benefits the homemaker, or compensates for or ameliorates the effects of the existing disparate economic condition of men and women is Orwellian newspeak." *Marshfield Clinic v. Discher*, 105 Wis.2d 506, 314 N.W.2d 326, 338 (1982) (Abrahamson, J., dissenting).

Formulations of the necessaries doctrine which impose mutual obligations of support may actually decrease access to credit for needy spouses. *See generally Condore*, 425 A.2d at 1024, 1028–29 (Rodowsky, J., dissenting). In 1982 Congress passed the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691–1691f (1988), to increase access to credit for creditworthy members of several classes previously discriminated against, including married women. Under the Act, if a married woman is creditworthy in her own right, the creditor cannot require her husband's service as a co-guarantor as a condition of extending credit. If a married woman is not creditworthy in her own right, however, the creditor may lawfully condition the granting of credit on the husband's agreement to become a co-obligor.

Congressional studies for the ECOA indicate that state support laws can inhibit the granting of credit to creditworthy women.[9] In this regard, it has been suggested that while a husband's duty of spousal support is a significant negative factor in his credit application, the wife's right to support is only a minimally positive factor in hers.[10] If so, a creditor reviewing a credit application from a married woman in Indiana would give little weight to her support rights and be wary of her secondary liability for her husband's debts. Such creditors would be even less disposed to extend credit to marginally creditworthy spouses than they might have otherwise been. Moreover, if the neglectful spouse is unwilling to serve as a co-obligor as provided for by the Act, as is likely, the needy spouse is left with no access to credit at all.

In addition to being ill-suited to advance the aims of the doctrine of necessaries, the *Memorial Hospital* approach is inconsistent with the policies of our legislature. While the Court of Appeals is correct in observing that Indiana courts should not hesitate to modify common law rules when their existence cannot be justified in light of the realities of modern life, such determinations should be consonant with the evolving body of public policy adopted by the General Assembly. In this case, legislative enactments suggest a policy distinguishing between financially superior and dependent spouses,[11] and sensitive to the financial resources of the obligated mate.[12] The liability imposed by the doc-

---

9. *Credit Discrimination: Hearings Before the House Subcomm. on Consumer Affairs of the Comm. on Banking and Currency on H.R. 14856 and H.R. 14908*, 93d Cong., 2d Sess. 1 (1974) (statement of Leonor K. Sullivan, Chair of Subcomm. on Consumer Affairs).

10. Note, *The Unnecessary Doctrine, supra* note 5, at 1782–83.

11. *E.g.*, Ind.Code Ann. § 31–7–11–1 (West Supp. 1992) (support may be ordered against "other spouse" in favor of a "dependent spouse"); Ind. Code Ann. § 31–1–11.5–11(e) (rehabilitative maintenance); Steven E. King, *Domestic Relations, 1984 Survey of Recent Developments in Indiana Law*, 18 Ind.L.Rev. 211, 228 (1985) (rehabilitative maintenance designed as a transi-

tional vehicle whereby homemakers may achieve post-dissolution economic self-sufficiency). *Cf.* Garfield, *supra* note 4, at 81 (marriage often leaves homemaker at financial mercy of spouse who works outside the home).

12. *E.g.* Ind.Code Ann. § 35–46–1–6 (West 1986) ("It is a defense [to an action for nonsupport of a spouse] that the accused person was unable to provide support."). *See also Esteb v. State ex rel. Enright* (1990), Ind.App., 563 N.E.2d 139 (support order should not deny obligor means of self support at subsistence level); *Melnik v. Melnik* (1980), Ind.App., 413 N.E.2d 969, 972 (no error in denying maintenance to wife whose ability to support herself was impaired by physical disability when husband was himself old

trine should be analogous to the obligation created by the duty which it is designed to support.

■ Synthesizing these points, we hold that the doctrine of necessaries operates in Indiana as follows. Each spouse is primarily liable for his or her independent debts. Typically, a creditor may look to a non-contracting spouse for satisfaction of the debts of the other only if the non-contracting spouse has otherwise agreed to contractual liability or can be said to have authorized the debt by implication under the laws of agency. When, however, there is a shortfall between a dependent spouse's necessary expenses and separate funds, the law will impose limited secondary liability upon the financially superior spouse by means of the doctrine of necessaries. We characterize the liability as "limited" because its outer boundaries are marked by the financially superior spouse's ability to pay at the time the debt was incurred. It is "secondary" in the sense that it exists only to the extent that the debtor spouse is unable to satisfy his or her own personal needs or obligations.[13] We think these rules will assist enforcement of the marital duty of support in both a workable[14] and an equitable manner.

## II. Effect of Petition for Dissolution

Consistent with its "financial partnership" theory, the Court of Appeals in this case rejected the Adjustment Bureau's contention that the obligations imposed by the doctrine exist until a final divorce decree has been granted. Where the marital "partnership" no longer subsists, marital status alone is an insufficient basis for imposing liability on the non-contracting spouse. Instead, the court said, in such cases the date of final separation (generally the date the dissolution petition is filed) ought typically be used to determine when a spouse's liability for the other's necessaries ends. We disagree.

■ In reaching its conclusion, the Court of Appeals relied heavily on Ind.Code.Ann. § 31–1–11.5–11(b) for the twin propositions that "equitable distribution is the determining factor in spousal liability" and that, usually, "equitable distribution takes place at the date of final separation." *Bartrom*, 600 N.E.2d at 1374. As an initial matter, the Court is mistaken in its belief that the date of final separation generally governs "equitable distribution." While § 31–1–11.5–11(a) establishes the date upon which the petition for dissolution is filed as the date of final separation, the date of separation itself governs only the includability in the marital pot of property acquired by either spouse "in his or her own right." Ind.Code Ann. § 31–1–11.5–11(b); *In re Marriage of Adams* (1989), Ind., 535 N.E.2d 124, 126. Property acquired by the joint efforts of both spouses may sometimes be included even if acquired after the filing of the petition but prior to entry of the decree. *Adams*, 535 N.E.2d at 127;

and infirm); *Wendorf v. Wendorf* (1977), 174 Ind.App. 172, 366 N.E.2d 703 (husband may prevail on appeal by establishing inability to pay maintenance award); *Castor v. Castor* (1975), 165 Ind.App. 520, 333 N.E.2d 124 (order for temporary maintenance should be based partly on husband's ability to pay).

**13.** *Cf. Scott*, 17 Ind.App. at 676–77, 47 N.E. at 390 ("While it is true that the obligation cannot be enforced if the wife has sufficient means of her own, we cannot subscribe to the doctrine invoked by the appellant that if she has any means, however small, she cannot be rendered liable.").

**14.** We acknowledge that the *Memorial Hospital* approach may, at first blush, provide creditors

with a greater degree of certainty than does the rule we adopt today. Under the former approach, a creditor need not delve into a family's financial background in order to ascertain from which spouse it can collect. Creditor certainty is an important component of the equation for if a creditor doubts that she will be able to recover from the financially superior spouse, she will likely be unwilling to advance credit. Nonetheless, a sliver of certainty must be sacrificed in order to ensure equitable results. Furthermore, we think a cursory credit check of the kind which is common today will allow a vendor of necessaries to know with some certainty whether she may look to the non-contracting spouse for payment should the debtor spouse prove unable to satisfy the entire obligation.

*Kirkman v. Kirkman* (1990), Ind., 555 N.E.2d 1293.[15]

■ Moreover, we find no Indiana precedent for the proposition that the duty of spousal support is terminated on any of the dates upon which the inclusion of property in the marital pot may be determined. As a general rule, the duty of spousal support continues at least until the marital relationship is dissolved. *Green v. Green* (1983), Ind.App., 447 N.E.2d 605; *Farley v. Farley* (1973), 157 Ind.App. 385, 300 N.E.2d 375. In appropriate circumstances, an estranged spouse may look to the other for support pending the final dissolution of the marriage. *Welling v. Welling* (1971), 257 Ind. 120, 272 N.E.2d 598; *Green*, 447 N.E.2d at 609; In fact, one form of support may be continued even beyond the date of final dissolution.[16]

■ The existence of temporary maintenance, Ind.Code Ann. § 31–1–11.5–7(d) (West Supp.1992), buttresses the proposition that the duty of spousal support survives the filing of a petition for dissolution, since such maintenance is nothing more than a *post hoc* judicial determination of the extent of the superior spouse's ongoing support obligation. Where temporary maintenance has been awarded, of course, the doctrine of necessaries may not be used to *enlarge* that liability, even if the award is insufficient for the recipient's maintenance. *Allen*, 90 Ind.App. at 298–99, 165 N.E. at 340. Where temporary maintenance has not been sought and awarded, however, pendency of dissolution proceedings will not shield the financially superior spouse from liability which would otherwise exist. *Id.* at 298, 165 N.E. at 340. In fact, even the lapse of an award of temporary maintenance may reinstate the common law duty of support. *Welling*, 257 Ind. at 131, 272 N.E.2d at 605. We therefore reassert that the doctrine of necessaries may be used to enforce the duty of spousal support whenever it exists.

## III. Effect of Misconduct

■ Finally, we turn to Mary's argument that marital misconduct on the part of her husband discharged her duty of support. The Court of Appeals rejected this contention, apparently believing that because fault is no longer a factor in Indiana dissolution proceedings, it also ought not be allowed to vary the duty of support. *Bartrom*, 600 N.E.2d at 1373. We note, however, that marital misconduct continues to affect marital rights and obligations in a number of settings. *See* Ind.Code Ann. § 31–7–11–1 (West Supp.1992) (support order may issue only if spouse has deserted dependent spouse "without cause"); Ind. Code Ann. §§ 29–1–2–14 & –15 (West 1979) (forfeiture of spouse's intestate share for adultery or abandonment); *Oliver v. Estate of Oliver* (1990), Ind.App., 554 N.E.2d 8.

At common law, marital misconduct would terminate the duty of support and, therefore, liability under the doctrine of necessaries. Schouler, *supra* note 1, at 127 & 130; *Oinson v. Heritage* (1873), 45 Ind. 73. If the husband expelled his wife from the marital home by no fault of hers, or by his cruelty compelled her to leave, and without means of support, "he sen[t] with her credit for her reasonable expenses." *Litson*, 26 Ind. at 491; *accord Rariden v. Mason* (1902), 30 Ind.App. 425, 427, 65 N.E. 554, 554. Conversely, where the dependent spouse was living apart from the financially superior spouse without sufficient justification, or if the separation was brought about by the dependent spouse's misconduct, imposition of liability under the doctrine of necessaries was "out of the question." *Allen*, 90 Ind.App. at 296, 165 N.E. at 339–40; *see also Wallace v. Ellis* (1873), 42 Ind. 582 (husband not liable for wife's board during her abandonment of marital home). Where the hus-

---

**15.** This distinction is especially important given that this provision is one of the mechanisms by which the law protects dependent spouses. *Cf. Adams,* 535 N.E.2d 124 (wife's 20–year contribution to marriage allowed husband to accumulate pension eligibility, thus pension rights were acquired by "joint efforts" and includible in marital pot despite fact that rights vested after filing of petition for dissolution).

**16.** Ind.Code Ann. § 31–1–11.5–11(e) (West Supp. 1992) (rehabilitative maintenance).

band and wife were separated, the tradesperson, at her peril, had to ascertain whether circumstances existed which would warrant extending credit to the necessitous spouse. *Allen,* 90 Ind.App. at 297, 165 N.E. at 340. But, it has been said that liability continued with the financially superior spouse until the dependent spouse's misconduct became "notorious." *Vanuxen v. Rose* (1855), 7 Ind. 222.

▮▮▮▮ We conclude that the statutes abolishing fault in dissolution of marriage do not effect a revocation of these common law rules. Statutes in derogation of the common law are to be strictly construed. *In re Adoption of Force* (1956), 126 Ind. App. 156, 131 N.E.2d 157. This rule has special force when the statute affects a common law right or duty. *See Hinshaw v. Board of Comm'rs of Jay County* (1993), Ind., 611 N.E.2d 637. When the legislature enacts a statute in derogation of the common law, this Court presumes that the legislature is aware of the common law, and does not intend to make any change therein beyond what it declares either in express terms or by unmistakable implication. *Tittle v. Mahan* (1991), Ind., 582 N.E.2d 796, 800. In cases of doubt, a statute is construed as not changing the common law. *Guardian Life Ins. v. Barry* (1937), 213 Ind. 56, 60, 10 N.E.2d 614, 616. We therefore hold that the rules regarding marital misconduct, applied in a gender-neutral manner, continue to limit common law support liability.

### Mandate

The trial court ruled in reliance on *Memorial Hospital.* We therefore vacate its decisions as to both motions for summary judgment and remand for reconsideration in light of this opinion.

DeBRULER, GIVAN and DICKSON, JJ., concur.

KRAHULIK, J., dissents as to Part I and concurs as to Parts II and III.