Morris WINDHORST, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0605–CR–260.

Court of Appeals of Indiana.

Dec. 22, 2006.

Transfer Granted Jan. 18, 2007.

Joel M. Schumm, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Morris Windhorst appeals his four-year sentence for class C felony child solicitation. We affirm.

### Issue

The issue is whether Windhorst's sentence is inappropriate in light of the nature of the offense and his character.

### Facts and Procedural History

Windhorst admitted to the following factual basis at his guilty plea hearing:

On February 20th of 2006, [Indianapolis Police] Officer Spivey, in affiliation with the Internet Crimes Against Children Taskforce, conducted a child solicitation operation. There was an undercover online investigation in which he used the persona of "Stacey" [and] contacted [Windhorst]. [Windhorst] knew "Stacey" to be fourteen years old and said that he was thirty-eight. He displayed a picture of himself apparently shirtless. He then presented himself on a web camera again shirtless. He invited this "Stacey" persona to a movie, indicating an intention of meeting. He expressed concern about whether or not she was a police officer. He then subsequently went ahead and sent three additional pictures of himself, one of which was a picture of himself in a full state of frontal nudity in a standing position. He admitted to being nude in the picture also. He, during this conversation, set up a time to meet with the "Stacey" [persona] describing his intent to fondle her. He described his intent to perform oral sex on her after the movie. He was also intending to bring, during this conversation, Bailey's Irish Crème liqueur to this fourteen year old person who[m] he believed to be fourteen years old. This was all through the use of his computer and he then subsequently did go to the meeting point[.]

Tr. at 15–16. Upon his arrival, police arrested the forty-four-year-old Windhorst.

On February 22, 2006, the State charged Windhorst with one count of class C felony child solicitation and two counts of class D felony dissemination of material harmful to minors. At a hearing on May 12, 2006, Windhorst agreed to plead guilty to the child solicitation count in exchange for the dismissal of the remaining counts, with a cap of two years on the executed portion of his sentence. Windhorst asked the trial court to consider the following mitigating factors: (1) that he had "pled guilty and accepted responsibility for his actions"; (2) that he was "very remorseful for those actions"; (3) that he had no prior convictions; (4) that he had been steadily employed for most of his life; (5) that he had served in the military; (6) that he had cooperated with police by giving a statement and consenting to a search of his home and computer; (7) that he had been suffering from depression; and (8) that he had participated in a program while in jail.[1] *Id.* at 28–29. The trial court found no aggravating or mitigating circumstances and imposed the advisory sentence of four years, with two years executed in the Department of Correction and two years suspended to probation. Windhorst now appeals his sentence.

---

1. The record does not disclose the precise nature of the program.

## Discussion and Decision

■ Indiana Code Section 35–50–2–6 provides that a person who commits a class C felony "shall be imprisoned for a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years." Indiana Code Section 35–38–1–7.1(d) allows trial courts to impose any sentence that is authorized by statute and permissible under the Indiana Constitution "regardless of the presence or absence of aggravating circumstances or mitigating circumstances." Article 7, Section 6 of the Indiana Constitution authorizes this Court to review and revise criminal defendants' sentences pursuant to the rules of our supreme court. Indiana Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Windhorst challenges the appropriateness of his four-year sentence for class C felony child solicitation.[2]

■ Our supreme court recently stated that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime com-

2. Windhorst does not specifically challenge the trial court's failure to find mitigating circumstances at sentencing. In *McMahon v. State*, 856 N.E.2d 743 (Ind.Ct.App.2006), a different panel of this Court surveyed the legislature's April 2005 amendments to Indiana's sentencing statutes that were enacted in response to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Smylie v. State*, 823 N.E.2d 679 (Ind. 2005), *cert. denied*. In support of its determination that we must now "merge our review of the trial court's finding and balancing of aggravators and mitigators under Indiana Code § 35–38–1–7.1 into our review for inappropriateness under Appellate Rule 7(B)[,]" *McMahon*, 856 N.E.2d at 748, the *McMahon* court stated,

> [W]hen it responded to *Blakely*, our General Assembly chose to keep intact the statute requiring a sentencing statement "if the court finds aggravating circumstances or mitigating circumstances." I.C. § 35–38–1–3. As mentioned above, Indiana courts have read this statute to require a sentencing statement anytime the trial court imposes a sentence other than the presumptive. *See Gardner [v. State*, 270 Ind. 627, 635 n. 4, 388 N.E.2d 513, 518 n. 4 (1979)]. Because we presume that "the legislature is aware of the common law, and does not intend to make any change therein beyond what it declares," *Bartrom v. Adjustment Bureau, Inc.*, 618 N.E.2d 1, 10 (Ind.1993), we presume that by keeping Indiana Code § 35–38–1–3 in place, the legislature intended to require a sentencing statement anytime the trial court imposes a sentence

> other than the *advisory* sentence under the new statutes. This requirement continues to serve two important purposes under Indiana's new sentencing regime: to guard against arbitrary sentences and to provide an adequate basis for appellate review.

*Id.* at 749. We respectfully disagree with this view. The *McMahon* court's analysis downplays the significance of the legislature's amendment of Indiana Code Section 35–38–1–7.1(d), which states that a trial court may impose any sentence that is authorized by statute and permissible under the Indiana Constitution *"regardless of the presence or absence* of aggravating circumstances or mitigating circumstances."* (Emphasis added.) We believe that the legislature's amendment of Indiana Code Section 35–38–1–7.1 plainly indicates its intention to change the common law as it existed before April 2005 as to the requirement of "a sentencing statement anytime the trial court imposes a sentence other than the presumptive." *McMahon*, 856 N.E.2d at 749. We also believe that the *McMahon* court's imposition of such a requirement will resurrect the very Sixth Amendment problems that the legislature sought to eliminate with its amendment of Indiana's sentencing scheme. *Cf. id.* at 747 ("On March 9, 2005, in response to *Blakely*, the Indiana Supreme Court announced that the portion of Indiana's sentencing scheme allowing trial courts to enhance sentences based on judicial findings of aggravating circumstances violated the Sixth Amendment's right to trial by jury.") (citing *Smylie*, 823 N.E.2d 679).

mitted." *Childress v. State,* 848 N.E.2d 1073, 1081 (Ind.2006). We disagree with Windhorst's suggestion that the particulars of his offense are unremarkable and do not go beyond the inherent nature of the crime charged.[3] At the guilty plea hearing, Windhorst admitted to sending "Stacey" photos of himself in partial and complete undress. He also admitted his intention to bring an alcoholic beverage to his planned rendezvous with a person he believed to be a fourteen-year-old girl. These facts go beyond the mere solicitation of a purported child by using a computer network. *See* Ind.Code § 35–42–4–6(c).

Moreover, these facts reflect unfavorably on Windhorst's character and significantly diminish the luster of his lack of prior convictions, employment history, military service, and cooperation with the police. Regarding Windhorst's guilty plea, we note that the State dismissed two additional felony charges and agreed to limit the executed sentence that the trial court could impose, thereby offsetting the benefit that Windhorst conferred upon the State by pleading guilty. *Cf. Francis v. State,* 817 N.E.2d 235, 237 n. 3 (Ind.2004) (noting that the mitigating significance of a guilty plea "will vary from case to case"). To the extent Windhorst contends that he should receive consideration for his expression of "deep remorse[,]" Appellant's Br. at 7, we note that the determination of the sincerity of a defendant's remorse is a matter best left to the trial court. *See Pickens v. State,* 767 N.E.2d 530, 534–35 (Ind.2002) ("We find the court's determination [of the sincerity of a defendant's re-

morse] to be similar to a determination of credibility."). Finally, Windhorst states that he lost his mother and his job in the year prior to the offense and claims that he was "severely depressed[.]" Appellant's Br. at 7. We note that Windhorst provided no independent evidence to support this claim or to establish that his depression affected his ability to differentiate between right and wrong. In fact, Windhorst's statement to the trial court indicates otherwise. *See, e.g.,* Tr. at 25 ("Though tempted, I had every opportunity to turn away. In my arrogance and in my self-destruction, I chose not to.... We can choose what we want or what God wants. I chose what I wanted.... I was raised by good parents who have taught me right and wrong. I chose wrong.").

In sum, we cannot conclude that Windhorst's four-year sentence is inappropriate in light of the nature of the offense and his character. We therefore affirm.

Affirmed.

VAIDIK, J., concurs in result with separate opinion.

BAKER, J., concurs in part and dissents in part with separate opinion.

VAIDIK, Judge, concurring in result.

I agree with Judge Crone's conclusion that Windhorst's sentence is not inappropriate. However, I write separately to express my disagreement with the suggestion that this Court's opinion in *McMahon v. State,* 856 N.E.2d 743 (Ind.Ct.App.2006), which I authored, "will resurrect the very Sixth Amendment problems that the legis-

---

**3.** *See* Ind.Code § 35–42–4–6(c) ("A person at least twenty-one (21) years of age who knowingly or intentionally solicits ... an individual the person believes to be a child at least fourteen (14) years of age but less than sixteen (16) years of age, to engage in: (1) sexual intercourse; (2) deviate sexual conduct; or

(3) any fondling or touching intended to arouse or satisfy the sexual desires of either the child or the older person; commits child solicitation, a Class D felony. However, the offense is a Class C felony if it is committed by using a computer network[.]").

lature sought to eliminate with its amendment of Indiana's sentencing scheme." Op. at 678 n. 2.

I understand the concern. We held in *McMahon* that "if a trial court relies upon aggravating or mitigating circumstances to impose a sentence other than the advisory, it must: (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the circumstances." 856 N.E.2d at 749–50. My colleagues apparently equate this requirement with the former requirement, found unconstitutional by the Indiana Supreme Court in *Smylie v. State,* that a "trial court judge ... must engage in judicial fact-finding during sentencing if a sentence greater than the presumptive fixed term is to be imposed." 823 N.E.2d 679, 683 (Ind. 2005). The distinction between the two requirements—requiring a court to explain the reasons for the sentence it imposes and requiring a court to find aggravating circumstances if it imposes a sentence above the presumptive—is certainly narrow. Nonetheless, it is a distinction of constitutional dimension, as the United States Supreme Court has recognized.

The United States Sentencing Guidelines ("Guidelines") were the subject of the high court's scrutiny in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In *Booker,* the Court, in a majority opinion penned by Justice Stevens, found unconstitutional two applications of the Guidelines because the Guidelines were mandatory. *Id.* at 233–34, 125 S.Ct. 738. That is, a sentencing judge was required to impose a sentence within the Guidelines range unless he found circumstances justifying a sentence outside the range. In this regard, the Guidelines were unconstitutional for the same reason

that Indiana's presumptive sentencing scheme was unconstitutional: both prohibited sentencing judges from exceeding certain limits unless they found circumstances justifying sentences in excess of those limits, i.e., aggravating circumstances. Translated into affirmative terms, judges were allowed to increase penalties based on judicial fact-finding. As such, both schemes violated the rule from *Apprendi v. New Jersey* that, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *see also Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

To remedy the constitutional flaw in the Guidelines scheme, the *Booker* Court, in a separate majority opinion authored by Justice Breyer, simply made the Guidelines advisory. *Id.* at 245, 125 S.Ct. 738. The Court then discussed the role of appellate courts under the advisory system, holding that despite the newly-advisory nature of the Guidelines, the federal sentencing statute continues to provide for appeals from sentencing decisions. *Id.* at 260, 125 S.Ct. 738; *see also id.* at 262, 125 S.Ct. 738 (eliminating appellate review of sentences entirely "would cut the statute loose from its moorings in congressional purpose"). The Court thereafter undertook to determine the appropriate standard of appellate review. Looking to the "related statutory language, the structure of the statute, the 'sound administration of justice,'" and "the past two decades of appellate practice involving departures [from the Guidelines range]," *id.* at 260–61, 125 S.Ct. 738, the Court settled on a single standard: unreasonableness. *Id.* at 261, 125 S.Ct. 738.

While appellate review of sentences on the federal level is now limited to whether

sentences are unreasonable, the United States Supreme Court made clear that the sentencing statutes still require district courts to "consult [the] Guidelines and take them into account when sentencing," even though they are "not bound to apply the Guidelines[.]" *Id.* at 264, 125 S.Ct. 738 (citing 18 U.S.C. § 3553(a)(4)). The United States Court of Appeals for the Seventh Circuit has interpreted this holding to require district courts to explain the reasons for the sentences they impose in order to facilitate appellate review of sentences, even though they are technically free to impose a sentence anywhere within the statutory range. *See United States v. Dean,* 414 F.3d 725, 729 (7th Cir.2005) (applying *Booker's* "unreasonableness" standard).

Likewise, though Indiana's trial courts, like those in the federal system, are technically free to impose a sentence anywhere within the statutory range, *see* Ind.Code § 35–38–1–7.1(d), a sentencing statement requirement will facilitate our review of sentences for inappropriateness under Indiana Appellate Rule 7(B). The majority implies that *McMahon* constitutes an end-run around the Sixth Amendment requirements of *Apprendi* and *Blakely* and that requiring sentencing statements will create a *de facto* presumptive scheme, identical to that found unconstitutional by the Indiana Supreme Court in *Smylie.* The same criticisms have been made about Justice Breyer's remedial majority opinion in *Booker. See* M.K.B. Darmer, *The Federal Sentencing Guidelines after* Blakely *and* Booker: *The Limits of Congressional Tolerance and a Greater Role for Juries,* 56 S.C. L.Rev. 533, 564 (2005) (positing that remedial *Booker* effectuated "end-run" around Sixth Amendment requirements of *Apprendi* and *Blakely); United States v. Kandirakis,* 441 F.Supp.2d 282, 297 (D.Mass.2006) (citing Darmer's article); *see also Booker,* 543 U.S. at 313, 125

S.Ct. 738 (Scalia, J., dissenting) (predicting that Guidelines, as construed by *Booker* remedial majority, will become *de facto* mandatory); *United States v. McDonald,* 461 F.3d 948, 959 (8th Cir.2006) (Bye, J., dissenting) (same); *United States v. Cage,* 458 F.3d 537, 544 (6th Cir.2006) (Clay, J., dissenting) (same). However, even Justice Scalia, whose disdain for Justice Breyer's remedial majority opinion in *Booker* is virtually palpable, apparently acknowledges that judicial factfinding under this new regime does not violate the Sixth Amendment. *Booker,* 543 U.S. at 313, 125 S.Ct. 738 (Scalia, J., dissenting) (writing about the "newly restored discretion" of trial court judges).

In criticizing *McMahon,* I believe my colleagues are in effect criticizing *Booker.* And while that case, with its multiple majorities and splintered opinions, is certainly ripe for criticism, it is the supreme law of the land. Therefore, I stand by the conclusion in *McMahon* that the trial court must provide a sentencing statement anytime it imposes a sentence other than the advisory sentence under the new statutes. 856 N.E.2d at 749–50. This requirement serves two very important purposes: to guard against arbitrary sentences and to provide an adequate basis for appellate review. *Id.* (quoting *Bryant v. State,* 841 N.E.2d 1154, 1156 (Ind.2006)).

BAKER, Judge, concurring in part and dissenting in part.

I agree with the majority's determination that our legislature's amendment of Indiana Code section 35–38–1–7.1 indicates an intention to change the common law as it existed before April 2005 regarding the requirement of "a sentencing statement anytime the trial court imposes a sentence other than the presumptive." Op. at 678 n. 2 (quoting *McMahon v. State,* 856 N.E.2d 743, 749 (Ind.Ct.App.2006)).

Hence, it is also my view that the pronouncement made by a different panel of this court in *McMahon* would effectively resurrect the precise Sixth Amendment problems that the legislature sought to eliminate with its amendment of Indiana's sentencing scheme.

On the other hand, I cannot agree that a four-year sentence was appropriate in this circumstance. Indeed, the State does not dispute Windhorst's contention that he had no criminal history. And Windhorst entered into a plea agreement with the State just two and one-half months after his arrest, Appellant's App. 4–6, 22–24, thus indicating an acceptance of responsibility for his actions. In my view, Windhorst's decision to plead guilty at such an early stage of the proceedings saved the State significant time and resources, thus affording it a substantial benefit. I would also note that even though the State dismissed two counts of class D felony dissemination of material harmful to minors with which Windhorst had been charged, only one of the photographs depicted Windhorst "in a full state of frontal nudity." Tr. p. 15–16. Windhorst was "apparently shirtless" in the other photo. *Id.*

Other significant mitigating factors that bear on Windhorst's character include that fact that he was depressed because his mother died in February 2005 and he had lost his job only a few months before committing the instant offense. Tr. p. 24. Additionally, there is no dispute that Windhorst showed remorse for his actions. *Id.* at 25. Furthermore, Windhorst maintained steady employment for nearly his entire adult life, served in the military or reserves for more than two decades, was cooperative with the police throughout the case, and involved himself in various programs while in jail awaiting sentencing. Tr. p. 28–29.

In sum, given the numerous significant mitigating circumstances in this case coupled with the absence of any aggravating factors, I would remand this cause to the trial court with instructions to impose a sentence of two years, with one year executed and one year suspended to probation.